Joel **MUNGUIA**, Petitioner–Appellant,

v.

**U.S. PAROLE COMMISSION**, Tom Kindt, Respondents–Appellees.

No. 88–1158.

United States Court of Appeals, Fifth Circuit.

April 28, 1989.

William R. Maynard, Asst. Federal Public Defender, Lucien B. Campbell, Federal Public Defender, El Paso, Tex., for petitioner-appellant.

Harold O. Atkinson, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for respondents-appellees.

Before POLITZ and JOLLY, Circuit Judges, and HUNTER,* District Judge.

E. GRADY JOLLY, Circuit Judge:

In 1982, while serving a special parole term, Joel Munguia was convicted of a misdemeanor. In 1984, the U.S. Parole Commission revoked Munguia's special parole term based on subsequent administrative violations unrelated to the 1982 conviction, but without prehearing notice of the possible penalty, applied the earlier conviction to forfeit Munguia's "street time." We conclude that because the forfeiture of street time was nondiscretionary and, indeed, was mandated by statute, the lack of prehearing notice of the penalty did not offend Munguia's due process rights. We therefore affirm.

* District Judge for the Western District of Louisi-

I

After conviction for distribution of heroin, Joel Munguia was sentenced on November 18, 1977, to a five-year prison term with a five-year special parole term (SPT) to follow, pursuant to 21 U.S.C. § 841(a)(1), (b)(1)(B). On March 31, 1982, Munguia's SPT began. The termination date of the five-year SPT would therefore have been March 30, 1987, if Munguia had behaved himself.

In October 1982, however, Munguia was arrested and charged with theft "over $5/under $20," a class B misdemeanor under Texas law, punishable by imprisonment. He pled guilty in state court and was fined $75 on December 27, 1982. Based on the charge, a parole violation warrant had issued previously in November 1982. On January 20, 1983, however, the warrant was withdrawn by the Parole Commission, and Munguia was reinstated to his SPT. A letter of reprimand, dated January 26, 1983, was mailed to Munguia, (which he denies receiving) warning that he should "closely coordinate with [his] U.S. Probation Officer and rectify [his] behavior immediately in order to preclude revocation."

A second parole violation warrant issued in February 1984. It charged Munguia with the administrative violations of not submitting supervision reports, not reporting to the parole office and not participating in a Commission-approved drug dependency program. The conviction on the 1982 misdemeanor theft charge, however, was *not* included as one of the charges in this second warrant. Munguia was arrested and returned to federal prison.

Apparently it was not until June 1984 that an institutional revocation hearing was held at FCI–La Tuna. Munguia admitted the administrative violations, and as a result, a recommendation to revoke his parole was made. Because Munguia had been convicted of the 1982 theft charge during his parole term, his "street time" (parole time) of approximately twenty-three months (from March 31, 1982 to February 27, 1984) was forfeited and added to his time to serve in prison.

ana, sitting by designation.

Munguia was again paroled in November 1984, but on May 15, 1985, yet another warrant was issued. Pursuant to the warrant, Munguia received another revocation hearing in August 1985, and his parole was revoked again based upon a public-intoxication offense. Munguia was reparoled on May 28, 1986. However, another parole violation warrant was issued in July 1986, and when the Commission revoked his special parole this time, he was sentenced to serve to the expiration of his five-year SPT. The full-term date is calculated to be June 27, 1989, with a projected mandatory release date of May 16, 1988.

Munguia, *pro se*, filed a 28 U.S.C. § 2241 petition for habeas relief in April 1987. After appointment of counsel, he filed an amended petition, alleging that the Commission unlawfully forfeited the street time he had accrued while he was on special parole the first time, thereby unlawfully extending the term of his special parole beyond March 1987.

The district court denied his petition in November 1987, and after his motion for a new trial was denied in January 1988, Munguia filed this timely appeal.

## II

Munguia does not dispute that his special parole term was validly revoked in June 1984 on the basis of administrative violations. Nor does he dispute that, prior to June 1984 and during his special parole term, he was convicted of a petty-theft offense punishable by imprisonment. The sole issue on appeal is whether the Parole Commission deprived Munguia of his "street time" without due process of law by failing to give him prehearing notice that if his special parole was revoked on the basis of administrative violations, the Commission could apply an earlier shoplifting conviction against him to deny him street time. Munguia asserts that such notice was required by the Constitution and the applicable statutes. If he had had such notice, he contends, he would have been able to offer mitigating evidence that might have persuaded the Parole Commission not to revoke his street-time credit.

## III

We will assume that if denial of street time is discretionary under the circumstances, as Munguia assumes, then mitigating evidence is relevant to the decision of the Commission and, under *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972), which held that freedom on parole is a liberty interest protected by the due process clause of the Constitution, Munguia had a due process right to prehearing notice so that he could prepare his case in mitigation. If, however, the applicable law makes loss of street time mandatory, then mitigating evidence is irrelevant because the earlier conviction automatically triggers loss of street time, and that earlier conviction cannot be relitigated, nor can the penalty—loss of street time—be mitigated. Where mitigation is foreclosed by statute, due process requires no prehearing notice that bears only on mitigation because there is simply no right to a mitigation hearing in the first place. The dispositive question with regard to Munguia's constitutional argument can thus be framed as whether the Commission within its discretion *may deny*, or by statute *shall deny*, a special parolee's street time when his parole has been validly revoked and when, during his parole, he has committed an offense punishable by imprisonment.

## IV

### A.

In order to answer the question, we must turn to the statutes. The applicable statute is the SPT provision of the Comprehensive Drug Abuse Prevention and Control Act of 1970, codified at 21 U.S.C. § 841. Munguia was originally convicted of distribution of heroin and sentenced to five years imprisonment, to be followed by a five-year special parole term, under 21 U.S. C. § 841(b)(1)(B). Section 841(c) defines when the special parole term imposed here might be revoked and what the consequences of revocation would be. Title 21 U.S.C. § 841(c) reads as follows:

(c) A special parole term imposed under this section or section 845 of this title may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section or section 845 of this title shall be in addition to, and not in lieu of, any other parole provided for by law.

Thus, the statute makes three things clear. First, if the conditions of a special parole term are violated, "the original term of imprisonment *shall be* increased by the period of the special parole term...." Second, the resulting new term of imprisonment *shall not be* diminished by the time which was spent on special parole." Third, a special parole term provided for in section 841(c) *"shall be in addition to, and not in lieu of,* any other parole provided for by law." In other words, under the statute, loss of street time is an immediate and mandatory consequence of revocation, linked inextricably in the words of the statute with revocation itself. The statute makes plain that upon revocation a special parolee *shall* automatically lose any street time.

Munguia does not attack this reading of the statute but disputes its applicability, arguing that section 841(c) was superseded by 18 U.S.C. § 4210(b)(2) when the latter was enacted as part of the Parole Commission and Reorganization Act of 1976. We disagree.

First, as noted above, section 841 expressly provides for a parole term over and above the parole terms provided for in Title 18. *See* H.Rep. No. 1444, 91st Cong.2d Sess. *reprinted in* 1970 U.S.Code Cong. & Admin.News 4566, 4614. Viewed in that context, the explicit provision in section 841(c) that defendants whose SPT is revoked automatically forfeit their street time, clearly embodies a congressional policy that certain drug offenders should receive more stringent punishment than other defendants.

Nor is there any evidence that Congress sought to change this policy when it enacted the Parole Commission and Reorganization Act of 1976. Nothing in the language or the legislative history of section 4210 suggests that it was intended to overrule section 841(c). Indeed, section 4210 contains no reference to Title 21 or to special parole. Furthermore, although section 4210 is cast in terms of the Parole Commission's jurisdiction, it does not state that its provisions apply to the exclusion of any other act of Congress. Thus, section 4210 is not perforce the only statute that governs the Parole Commission's authority over parole terms; nor do the terms of section 4210 empower the Parole Commission to ignore section 841(c) and treat persons serving special parole terms like all other parolees, as the Parole Commission effectively did by regulation (*see* 28 C.F.R. § 2.57, *infra*).

Nor does the legislative history of section 4210 suggest that section 4210 impliedly repeals section 841(c). The House Conference Report, No. 838, 94th Cong., 2d Sess. 31–32, *reprinted in* 1976 U.S.Code Cong. & Admin.News 335, 364, makes clear that section 4210 is directed at the parole provisions of Title 18; it contains no reference to the special parole provisions of Title 21.

Thus, there is no express evidence that Congress intended to overrule all or part of section 841(c) when it enacted section 4210. As is well established, repeals by implication are not favored, and courts presume that two statutes can be construed consistently whenever possible. *See* N. Singer, *Sutherland Statutory Construction,* § 23.10 at 346 (Sands 4th ed.). We therefore conclude that the enactment of section 4210 does not affect the substantive terms of section 841(c) that control the loss of street time with respect to drug offenders.

### B.

We further note that even if 18 U.S.C. § 4210(b)(2)—which governs how the Pa-

role Commission treats denial of street time in the ordinary parole situation—were controlling in our case today, the answer would still be the same.[1] Section 4210(b)(2) reads as follows:

> (b) Except as otherwise provided in this section, the jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration of the maximum term or terms for which he was sentenced, except that—
>
> . . . .
>
> (2) *in the case of a parolee who has been convicted of a Federal, State, or local crime committed subsequent to his release on parole, and such crime is punishable by a term of imprisonment,* detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense.... (Emphasis supplied.)

The Parole Commission regulation governing treatment of special parole, 28 C.F.R. § 2.57, provides in pertinent part: "(c) ... Should a parolee violate conditions of release during the Special Parole Term he will be subject to revocation on the Special Parole Term *as provided in § 2.52, and subject to reparole or mandatory release under the Special Parole Term.*" (Emphasis supplied.) 28 C.F.R. § 2.57 thus channels special parolees through 28 C.F.R. § 2.52, which governs revocation of street time of ordinary parolees. Section 2.52 reads in pertinent part as follows:

> (c) A parolee whose release is revoked by the Commission will receive credit on service of his sentence for time spent under supervision, except as provided below:

. . . .

> (2) *If the parolee has been convicted of a new offense committed subsequent to his release of parole, which is punishable by a term of imprisonment, forfeiture of the time from the date of such release to the date of execution of the warrant shall be ordered,* and such time shall not be credited to service of the sentence. (Emphasis supplied.)

It is well settled in this circuit that 18 U.S.C. § 4210(b)(2), when interpreted in the light of 28 C.F.R. 2.52, means that a parole violator automatically forfeits his street time when he is convicted of a new offense punishable by imprisonment committed subsequent to his release on parole. *United States v. Newton,* 698 F.2d 770, 772 (5th Cir.1983) (citing *Frick v. Quinlin,* 631 F.2d 37, 39 (5th Cir.1980)); *Harris v. Day,* 649 F.2d 755, 758–60 (10th Cir.1981); *United States ex rel Del Genio v. United States Bureau of Prisons,* 644 F.2d 585, 586–88 (7th Cir.1980); *Wilkerson v. United States Board of Parole,* 606 F.2d 750 (7th Cir. 1979); and *Lambert v. Warden,* 591 F.2d 4, 8 (5th Cir.1979). Thus, even if 18 U.S.C. §§ 4210 *et seq.* and regulations pursuant thereto were the only authorities applicable to this case as Munguia contends, there was no constitutional due process violation. This is true because those statutes and regulations make the loss of street time mandatory in Munguia's situation, and notice of the mandatory penalty would have been irrelevant and immaterial since no defense in mitigation of the penalty could have been offered.[2]

## V

Munguia also makes a statutory due process argument, contending that the Parole Commission procedural statutes and regulations required written notice that his earlier conviction could be applied to deny his

---

1. We note that in 1984, Congress made 21 U.S.C. §§ 841(c) and 18 U.S.C. § 4210(b)(2) applicable only to sentencing for offenses committed before November 1, 1987. Munguia committed his underlying drug offense before 1987.

2. We are aware that our holding may appear to create a conflict with the Ninth Circuit based on its decision in *Vanes v. U.S. Parole Commission,*

741 F.2d 1197 (9th Cir.1984) (reaffirmed in *Boniface v. Carlson,* 856 F.2d 1434 (9th Cir.1988)). However, that case is distinguishable for two reasons. First, in that case there was no valid revocation. Second, although that case apparently involved a special parole term, the court did not consider the effect of 21 U.S.C. § 841(c).

street time. We need not address this contention because even if the Commission was required to give such notice, Munguia can show no prejudice. The Commission's failure to give notice was harmless in view of our earlier observation that any defense that Munguia may have raised against the denial of his street time would not have affected the mandatory forfeiture of street time required by both 21 U.S.C. § 841(c) and 18 U.S.C. § 4210(b)(2).

## VI

For the reasons given in this opinion, the judgment of the district court is

AFFIRMED.